UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 08-10365-GAO

UNITED STATES OF AMERICA

v.

HECTOR BANNISTER,
Defendant.

OPINION AND ORDER
November 6, 2015

O'TOOLE, D.J.

In 2009, the defendant, Hector Bannister, pled guilty to one count of possession with intent to distribute cocaine base. He was sentenced to ninety-six months of incarceration. In 2012, it came to light that Annie Dookhan, a former chemist at the William F. Hinton Drug Laboratory (the "Hinton Lab"), had been improperly testing drugs and falsifying drug tests for several years. The defendant thereafter moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 on the basis that his guilty plea had not been knowing, voluntary, and intelligent. The defendant later moved to stay his § 2255 motion pending the release of a Massachusetts Office of Inspector General Report on the Hinton Lab scandal. That report has since been released. (Mem. in Supp. of Mot. to Vacate Plea, Ex. A, Massachusetts Office of Inspector General, Investigation of the Drug Laboratory at the William A. Hinton State Laboratory Institute 2002 – 2012 [hereinafter OIG Report] (dkt. no. 83-1).)

**I.      Background**

Other than the disagreements about what happened in the course of the testing of the substances seized from Bannister at the Hinton Lab, the facts of this case are not significantly in dispute.

A.      Observation and Arrest

The government's evidence against the defendant included the following: On September 12, 2008, Detective Greg Walsh of the Boston Police Department Drug Control Unit observed the defendant near the Pine Street Inn, an area known to attract crack cocaine dealers. Walsh had previously arrested the defendant for possession with intent to distribute cocaine; that arrest led to a conviction. Walsh recognized the defendant from that prior arrest, which had taken place nearby.

Walsh watched the defendant meet with a group of men who appeared to be homeless. The defendant was seen putting his hand into the back of his pants to retrieve a small item, an action consistent with concealing a small amount of drugs. The defendant then walked to a plaza near the Massachusetts Pike Towers, and then proceeded to bend down and stand up multiple times, putting something in or removing something from the back of his pants. Walsh, believing that the defendant had picked up his "stash," directed other police officers to stop the defendant.

As the officers approached and one showed his badge, the defendant ran. During the chase, the defendant took something from the back of his pants and deposited it into a sewer drain. The officers arrested the defendant and retrieved the item from the sewer. The item was a plastic bag containing at least eighteen smaller wrapped objects that appeared to be crack cocaine. The contents field tested positive for cocaine base. These eighteen bags were sent to the Hinton Lab for chemical analysis of the substance.

Walsh gave Bannister his <u>Miranda</u> rights, and Bannister requested to make a couple of phone calls on his cellphone. The police heard his side of the conversations. Bannister called his mother, telling her that he "messed up," "got locked up for drugs," and was "sorry." Bannister also called his girlfriend, telling her "I messed up but I have bills to pay."

### B.    <u>Hinton Lab</u>

It is undisputed that at the Hinton Lab, the suspected drugs were certified as 3.15 grams of cocaine base, with a certification signed by chemists Kate A. Corbett and Peter Piro. Corbett's name appears first, and she was presumably the primary chemist. Nowhere on this document does Dookhan's name appear. Beyond these facts, the parties' characterizations of what happened at the Hinton Lab differ.

While Dookhan is not listed as a primary or secondary chemist, some laboratory readouts of tests performed on the suspected drugs in this case do bear her initials, "ASD." (<u>E.g.</u>, Mem. in Supp. of Mot. to Vacate Plea, Ex. C, Bannister-1327 (dkt. no. 83-3).) The defendant argues that these documents prove that Dookhan, in addition to Corbett and Piro, ran tests on these specimens, tainting the certification. The government argues that a software glitch caused the initials "ASD" to incorrectly appear in the printout when Corbett was in fact running the tests. Corbett submitted an affidavit to that effect. Written discovery also produced both sides of the control card, a document on the back of which potentially inconsistent test results would be documented. On the back of the card for this case, only one record appears, indicating that the substance was tested by the Gas Chromatograph/Mass Spectrometer ("GC/MS") machine only once and not continually retested in order to obtain a false positive result. (<u>See</u> Mem. in Supp. of Mot. to Vacate Plea, Ex. C, Bannister-1346–47.)

### C. Plea, Sentencing, and the § 2255 Motion

The defendant pled guilty on June 26, 2009, shortly before his trial was to commence. The government agreed to certify a three point decrease in his total offense level for acceptance of responsibility despite the lateness of the plea. At the change of plea hearing, the Court asked the defendant if the factual summary of his offense conduct given by the government was essentially true and if the defendant in fact committed the crime charged; the defendant answered both questions affirmatively. (Opp'n to Mot. to Vacate and Req. for Summ. J., Ex. 8, Disposition Tr. 11–15 (June 26, 2009) (dkt. no. 91-2).) The defendant has not since denied his factual guilt or affirmatively asserted that the substances seized on his arrest were not in fact cocaine.

The defendant had been found guilty twice before for possession with intent to distribute cocaine. Because of his criminal history, he was categorized as a career offender under the Sentencing Guidelines. See U.S. Sentencing Guidelines Manual § 4B1.1 (U.S. Sentencing Comm'n 2009). The Court adopted the Presentence Report's recommended Guidelines calculations of a Total Offense Level of 31 and a Criminal History Category of VI, yielding a recommended sentence of 188 to 235 months incarceration. Because of his criminal history, the weight of the drugs did not affect his sentencing range. The Court sentenced the defendant to a term of ninety-six months incarceration.

## II. Voluntary, Knowing, and Intelligent Plea

Post-conviction relief pursuant to § 2255 is an extraordinary remedy that is available only if the defendant can make "a sufficient showing of fundamental unfairness." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994). Relief under § 2255 is available where the defendant's

sentence was imposed in violation of the Constitution or laws of the United States, was imposed by a court that lacked jurisdiction, exceeded the maximum authorized by law, or is otherwise subject to collateral attack. David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The defendant bears the burden of showing that he is entitled to relief. Id.

On a § 2255 motion, a defendant "can collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006). This showing is a two-step process. First, the defendant must show that "some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea." Ferrara, 456 F.3d at 290. "Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." Id. In the materiality inquiry a defendant must show "a reasonable probability that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial." Ferrara, 456 F.3d at 294 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (alteration in original). This inquiry uses an objective standard. See id.

Because the materiality inquiry is dispositive for this case, evaluating whether or not Dookhan's conduct satisfies the first part of the Ferrara test is unnecessary. See Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014) (finding that reaching whether Dookhan's conduct was egregious and attributable to the government unnecessary when misconduct not material).

This case is not in uncharted territory. Dookhan's foul play has infected an enormous number of state and federal criminal drug cases, leading to two decisions by the First Circuit that give guidance on how to evaluate these cases: Wilkins and United States v. Merritt, 755 F.3d 6

(1st Cir. 2014). As <u>Wilkins</u> dealt with a similarly-situated § 2255 motion, it is particularly instructive.

The defendant's motion fails for largely the same reasons the § 2255 motion failed in <u>Wilkins</u>: ample circumstantial evidence supports the conviction, and the defendant's "miasmic theory of evidentiary corruption has little to commend it." See <u>Wilkins</u>, 754 F.3d at 29. Even if one were to discount completely the Hinton Lab results, the circumstances surrounding the defendant's arrest point convincingly toward the substances in the bags having been cocaine. Just before his arrest, the defendant engaged in activity consistent with cocaine dealing, by shuffling small sealed bags around the rear of his pants and picking up a "stash" off the ground, by meeting with apparently homeless people under an overpass in an area known for drug dealing, by running from the police on sight, and by dumping at least eighteen small individually wrapped bags of what visually appeared to be crack cocaine into the sewer. Additionally, the substances in the bags field tested positive for cocaine.

While unlike in <u>Wilkins</u>, none of the sealed plastic bags from this case have been retested for cocaine content since the Hinton Lab scandal broke, also unlike in <u>Wilkins</u>, Dookhan was not one of the certifying chemists. See <u>id.</u> There is no evidence that Corbett and Piro—the people who actually certified the cocaine content of the bags—participated in any of the same malfeasance at the Hinton Lab. "To the contrary, the OIG report emphasizes that 'Dookhan was the sole bad actor at the Drug Lab.'" <u>United States v. Chin</u>, 54 F. Supp. 3d 87, 92 (D. Mass. 2014) (Saris, J.) (quoting OIG Report 1). Even if the initials "ASD" located on some computer printouts mean that Dookhan conducted some tests on top of the ones performed by Corbett and Piro, there is "no evidence that Dookhan tampered with any drug samples assigned to another chemist <u>even when she played a role in confirming another chemist's test results</u>." (OIG Report 1 (emphasis added).) The fact that

6

the back of the control card only has one test record indicates that, unlike in some cases, the substance was not repeatedly tested on the GC/MS machine with multiple inconsistent results. (See OIG Report 116). The record provides no indication that the substances inside the bags were tested improperly by Corbett and Piro.

But much of the argument concerning Dookhan is beside the point. With ample circumstantial evidence, the slight possibility of taint raised by Dookhan's presence does not carry the defendant's burden of showing that it would have been objectively reasonable to forego his plea had he known of Dookhan's behavior.

The defendant goes further and argues that the general lax security standards, chain of custody standards, and training at the Hinton Lab undercut the value of drug testing done at that facility beyond the ill repute stemming from Dookhan. The defendant has a small point; the OIG Report would have served as useful impeachment material against Corbett or Piro had this case gone to trial. (See, e.g., OIG Report 2 (dkt. no. 83-1) ("The training of chemists at the Drug Lab was wholly inadequate. . . . There were no mechanisms in place to document discrepancies in chain-of-custody protocols or inconsistent testing results.").) However, impeachment of an expert alone is not enough to satisfy the showing of materiality under Ferarra. See Chin, 54 F. Supp. 3d at 92 (finding that impeachment of experts based on OIG Report not material); cf. Ferarra, 456 F.3d at 296 (finding materiality where a key fact-witness recantation undermined the factual basis of the plea). Here, the defendant points to no evidence showing that the bags seized in this case contained anything other than crack cocaine. If this case had gone to trial, the defendant would still have faced substantial other evidence of his guilt, and there is no guarantee that impeachment of Corbett would have gained the defendant anything. In the light of those considerations, the

7

defendant has not shown evidence "sufficient to undermine confidence in a belief that the petitioner would have entered a plea." Ferarra, 456 F.3d at 294.

The defendant would have had other reasons for pleading guilty as well. Had the defendant gone to trial, he would not have received a three point reduction in offense level for acceptance of responsibility, and the Guidelines range would have moved from 188–235 months incarceration to 262–327 months, an increase of seventy-four months in the minimum of the range.

Last, and far from least, the defendant admitted his guilt in open court when he changed his plea, and in no filings since has he attempted to deny that guilt, or deny that the substance in the bags seized was, in fact, crack cocaine. "This admission is entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack." Wilkins, 754 F.3d at 30; see also United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003) ("Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea."); cf. Ferrara, 456 F.3d at 296 (finding relevant defendant's "consistent assertions" at plea colloquy that he had not committed the crime). Combined with the strong circumstantial evidence that the substance was cocaine and the slight, if any, connection with Dookhan, the defendant fails to show that he would not have pled guilty had he known all the details of what occurred at the Hinton Lab.

### III. Conclusion

For the foregoing reasons, the defendant's Motion to Vacate Plea Pursuant to 28 U.S.C. § 2255 (dkt. no. 77) is DENIED. Since the OIG Report has now been published, the defendant's Motion to Stay Proceedings on Defendant's Motion to Vacate Plea Pursuant to 28 U.S.C. § 2255 (dkt. no. 79) is MOOT.

Finally, because the defendant has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>United States District Judge